IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIN K. WILSON,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED URGENT CARE, P.C.,<br>ADVANCED URGENT CARE OF MONTGOMERYVILLE, LLC.,<br>INCARE, LLC.,<br>MEHDI NIKPARVAR, M.D.<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 4:16-CV-0214<br><br><br><br>(Judge Brann) |

## MEMORANDUM OPINION

March 8, 2017

## I. BACKGROUND

Plaintiff, Erin K. Wilson (hereinafter "Wilson"), filed a complaint on February 8, 2016, and then a four count amended complaint on February 12, 2016.[1] Named as defendants are her former employers, one individual, Mehdi Nikparvar, M.D.; and three corporate defendants, Advanced Urgent Care, P.C., Advanced Urgent Care of Montgomeryville, LLC., and Incare, LLC. Count I, brought under Title VII alleges sexual harassment/hostile work environment against the three corporate defendants. Count II, also brought under Title VII, alleges retaliatory discharge from employment against the three corporate defendants. Count III is an allegation

[1] ECF No. 4

of a violation of the retaliation provision of the False Claims Act against all defendants. Count IV alleges sexual harassment and retaliation under the Pennsylvania Human Relations Act against the corporate defendants.

Defendant Advanced Urgent Care, PC (hereinafter "AUC"), is a walk-in medical treatment center with multiple locations in Pennsylvania. Its answer to the amended complaint was due April 13, 2016; but no answer was filed. The Clerk entered default on May 3, 2016. Plaintiff moved for default judgment against it[2], and a hearing was held on January 19, 2017. No counsel has entered an appearance on behalf of AUC and no counsel appeared on its behalf at that hearing.

Defendant Advanced Urgent Care of Montgomeryville, LLC (hereinafter "AUCOM"), is a wholly-owned subsidiary of AUC. AUCOM was Plaintiff's employer at the time her employment was terminated. Its answer to the amended complaint was due May 24, 2016; no answer was filed. The Clerk entered default on May 3, 2016. Plaintiff moved for default judgment against it[3], and a hearing was also held on January 19, 2017. Unlike AUC, counsel entered an appearance on behalf of AUCOM and provided representation at the hearing. Counsel has not, however, filed an answer on AUCOM's behalf, nor has counsel filed a motion to set aside default (although orally requested upon my prompting at the hearing).

[2] ECF No. 10.
[3] ECF No. 19.

Counsel also failed to comply with my Order entered following the hearing which directed a brief on the issue of default judgment be filed by February 16, 2017.

Defendant Incare, LLC is the predecessor to AUC, and Plaintiff's original employer. Incare has not been served with process.

The final defendant is Mehdi Nikparvar, MD. According to the complaint, he is the medical director at the State College, Pennsylvania AUC facility. Testimony was elicited at the hearing that indicated that he is the owner or principal of the three corporate defendants. Dr. Nikparvar answered the complaint, *pro se*, on May 26, 2016. He did not appear at the January 19, 2017 hearing.

## II. Discussion

### a. Facts

Wilson began to work for Incare, LLC in 2011, and continued at its State College facility after Incare's acquisition by the Advanced Urgent Care defendants. She was terminated on January 8, 2014. All of the events in question that give rise to this litigation took place on that date. The pertinent allegations from the amended complaint which are accepted as true after the hearing and testimony are as follows (and are numbered as they are in that document):

> 24. On January 8, 2014, Plaintiff was subjected to a series of lewd, vulgar and inappropriate comments of a sexual nature from Nikparvar.

a. Plaintiff and Nikparvar were engaged in a discussion concerning the filling of a prescription for a patient who had been treated at the Practice just a few days earlier.

b. Plaintiff inquired whether it was necessary for the patient to return to the Practice in order for Nikparvar to write the prescription since the patient had been seen in the office just a few days earlier.

c. In response, and in front of Plaintiff's colleagues, Nikparvar asked Plaintiff perhaps ten times in an increasingly louder voice and with an agitated and antagonistic demeanor, "Do you give blow jobs for free?" or words to that effect.

d. Plaintiff was shocked and mortified, but finally responded, "No."

e. Arguing that the patient should return to the Practice so that Nikparvar could derive an additional fee, Nikparvar analogized, "That's right, you charge money for blow-jobs and we don't give anything for free either…."

f. Nikparvar's analogy characterized Plaintiff as a prostitute who accepts money in exchange for sexual acts.

32. In fact, later that same day, Plaintiff requested to meet with Nikparvar and Elizabeth Harclerode, Defendant's Office Manager, to register a formal complaint and specifically oppose the Sexual Harassment. At this meeting:

a. Plaintiff opposed Nikparvar's Sexual Harassment noting that she was highly offended by his angry outburst, offensive rhetoric, and repeated references to oral sex.

b. Plaintiff opposed Nikparvar's Sexual Harassment noting that his progressively louder and lude "blow job" comments were uncalled-for, hostile, and intimidating.

c. Plaintiff opposed Nikparvar's Sexual Harassment noting that she was highly offended by his characterization of her as a woman who would accept or has accepted money to perform sexual acts.

33. At this meeting, Nikparvar belittled Plaintiff, chastised her for becoming emotionally upset and offended by his conduct and comments, and dismissed the import of her complaint.

34. Nikparvar admitted to making the "blow job" comments, but attempted to marginalize the gravity of his remarks by explaining that he did so "because that is all your mentality would understand".

35. Nikparvar response to Plaintiff's formal complaint underscores his misogynistic attitude.

36. Accordingly, Nikparvar threatened Plaintiff that she could leave her employment if she was so highly offended by his comments and behavior.

37. Plaintiff replied that she did not intend to resign but that she expected Nikparvar to refrain from future sexually offensive, harassing, intimidating, and misogynistic conduct.

38. Plaintiff also informed Nikparvar that she believed he was attempting to engage in Medicare fraud by requiring a patient who had been treated at the Practice days earlier to be treated in the office again and billed a second time for an in-office examination simply to write a prescription for the patient.

39. Nikparvar refused to relent and continued in his campaign to denigrate, demean, and demoralize Plaintiff stating repeatedly, "You are nothing…you are nothing!"

40. Nikparvar then falsely accused Plaintiff of lying about her need for an absence from work in mid-November 2013 for wisdom tooth surgery.

41. In addition, Nikparvar falsely accused Plaintiff falsifying time sheets many months earlier in order to steal money from Defendants in the form of payroll.

42. Plaintiff denied and continues to deny that she was dishonest about the need for wisdom tooth surgery in November 2013 or her need for a medical leave of absence for same.

43. Plaintiff denied and continues to deny that she falsified time sheets or stole money from Defendants in the form of payroll or in any other fashion.

44. Nikparvar lodged against Plaintiff the false accusations described in Paragraphs 40 and 41 above at the meeting on January 8, 2014 in retaliation for Plaintiff's opposition to Nikparvar's Sexual Harassment and formal complaint of same.

45. Immediately after lodging the false accusations described in Paragraphs 40 and 41 above, Nikparvar ordered Ms. Harclerode to terminate Plaintiff's employment.

46. At the conclusion of the aforesaid meeting on January 8, 2014, Plaintiff's employment was terminated.

### b. Discussion

Federal Rule of Civil Procedure 55 discusses default and default judgment. Rule 55(b)(2) states:

> By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

"Court should look with disfavor upon allowance of judgments by default."[4] "Grant or denial of motion for entry of default judgment is within discretion of trial court; in exercising that discretion the philosophy of these rules favors trial on the merits in contradistinction to judgments by default and court must look to that policy not only when petition to vacate a default judgment is presented but also when approving or denying entry of default."[5]

"When a defendant fails to appear . . . the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."), with the upshot that "'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"[6] Accordingly, I will summarily enter default judgment against AUC.

"Once a default has been entered and entry of judgment pursuant to default is sought, the function of the trial court is not to weigh conflicting evidence, but, rather, a court must make sole determination whether allegations of party in whose favor default has been entered are susceptible

---

[4] *Hughes v. Holland*, 320 F.2d 781 (DC. App. Ct. 1963).
[5] *Kocenko v. Buskirk*, 56 F.R.D. 14. (E.D.Pa.1972).
[6] *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (*citing* 10 Charles Alan Wright et al., Federal Practice & Procedure § 2688 (2d ed. 1983).

of proof."[7] The proper standard for a district court's evaluation of an employee's motion for default judgment, on an employment discrimination claim against employer, is whether Plaintiff alleged sufficient facts to state a plausible claim for relief, not whether Plaintiff had made out a prima facie case of disability discrimination under the *McDonnell-Douglas* burden-shifting framework.

"The Third Circuit Court of Appeals has condensed these factors into three main issues: (i) whether the plaintiff will be prejudiced if the default is denied, (ii) whether the defendant has a meritorious defense; and (iii) whether the default was the product of defendant's culpable conduct."[8] As to the first factor, Wilson will be prejudiced if default is denied. It is clear from Defendant's history of non-responsiveness that Defendant does not intend to participate in this action in any meaningful manner.

Next, it does not appear that AUCOM has a meritorious defense. "A meritorious defense is one which, if established at trial, would completely bar plaintiff's recovery."[9] AUCOM did not raise one at the time of the hearing. One can only presume that the reason for that is that there is no

[7] *In re Consolidated Pretrial Proceeding in Air West Securities Litigation*, 436 F.Supp. 1281. (N.D.Cal.1977).
[8] *E. Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 657 F. Supp. 2d 545, 551 (E.D. Pa. 2009) (internal citations omitted).
[9] *Id.* at 606.

defense to the inappropriate comments made to Plaintiff, just prior to the termination of her employment.

Finally, as to the third factor, it is clear that default is the product of Defendant's culpable conduct. "Culpable conduct relates only to "actions taken willfully or in bad faith."[10] "Default judgment must normally be viewed as available only when adversary process has been halted because of essentially unresponsive party; in that instance, diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights."[11] "While it is appropriate for a district court to enter a default judgment when a party fails to appropriately respond in a timely manner, it is incumbent upon the district court to ensure that the unchallenged facts constitute a legitimate cause of action prior to entering final judgment."[12]

Here, I find both that the unchallenged facts show a legitimate cause of action and that default is the product of Defendant's culpable conduct. Wilson has stated a cause of action for each of the four counts she has brought, and AUCOM has been unresponsive. No answer has been filed; no motion to set aside the entry of default has been filed; and despite counsel's

---

[10] *Id.*
[11] *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689 (D.C. App. Ct. 1970).
[12] *Marshall v. Baggett*, 616 F.3d 849 (8th Cir. 2010).

appearance at the Rule 55(b)(2) hearing, AUCOM failed to file a post-hearing brief as directed,[13] in violation of Federal Rule of Civil Procedure 41(b). The adversary process has been halted entirely due to the unresponsiveness of Defendant.

Moreover, the principal of both AUC and AUCOM is Defendant Nikparvar. The argument at the hearing, as discussed in Plaintiff's brief, is that Nikparvar is intentionally avoiding defending the suit. Nikparvar has apparently indicated to Plaintiff's counsel that he intends to drag out this litigation and views himself, and his businesses, as judgment proof.[14]

Accordingly, I will retain jurisdiction over the two corporate defendants in the event the judgment is not paid to Wilson by April 3, 2017. If the judgment is not paid to her by that date, she may return to me with a proposed order for the Court, perhaps a writ of garnishment.

### c. DAMAGES DETERMINATION

"To win damages in an employment discrimination case, a plaintiff must prove membership in a protected class and that he or she was terminated on account of membership in that protected class rather than for legitimate nondiscriminatory

---

[13] *See* Order, January 19, 2017, ECF No. 31.

[14] Pl.'s Br., February 16, 2017, ECF No. 32. See page 9 for a further list of Nikparvar's statements.

reasons."[15] Although "A party's default does not suggest that the party has admitted the amount of damages that the moving party seeks,"[16] there is no opposition on the record as to the amount of damages Wilson seeks. AUC failed to appear at the hearing and AUCOM, despite its appearance by counsel, failed to brief the issue, despite clear direction to do so. *See* M.D. L.R. 7.6.

"Defaults are treated as admissions of the facts alleged, but a plaintiff may still be required to prove that he or she is entitled to the damages sought."[17] "A reasonable calculation should be made by looking at the evidence and the affidavits submitted by the moving party."[18] After a hearing during which testimony and evidence were presented, I find that the amount claimed by Plaintiff is reasonable.

I will therefore award Wilson the full amount of present damages requested in the amount of $78,870. This sum is as calculated by the Employment Law Economic Damages Report submitted as Exhibit 10 at the hearing, and is supported by the other exhibits entered by Plaintiff at the hearing. "Plaintiff is

---

[15] *Rainey v. Diamond State Port Corp.*, 354 F. App'x 722, 724 (3d Cir. 2009) *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[16] *E. Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009)

[17] *Rainey v. Diamond State Port Corp*., 354 F. App'x 722, 724 (3d Cir. 2009)

[18] *E. Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009)

entitled to [front pay and] back pay under the [Title VII] and the PHRA.[19] "Plaintiff also seeks prejudgment interest on her back pay award, which is authorized under the PHRA and ADA."[20] "Federal courts have discretion over whether to award prejudgment interest and the interest rate to be used."[21] "Federal courts typically use the IRS overpayment rate, which is 3%,"[22] the rate that Plaintiff used in her report. "Front pay is particularly appropriate in cases where the plaintiff cannot be reinstated in her prior position."[23]

Plaintiff requests, and is entitled to, compensatory damages for emotional distress under the PHRA[24] and Title VII[25] At the January 19, 2017 hearing, Wilson testified about the effect that these events had on her life; she was moody, depressed and anxious but not so severe as to require medical treatment. Accordingly, I will use the *Johnson v. Dependability Co., L.L.C.* case cited herein as a benchmark. In *Johnson*, Plaintiff was awarded $10,000 compensatory damages, as her testimony and medical records indicated exacerbated depression

---

[19] *Johnson v. Dependability Co., L.L.C.*, No. CV 15-3355, 2016 WL 852038, at *3-4 (E.D. Pa. Mar. 3, 2016) *citing* 42 U.S.C. § 12117.
[20] *Id at * 3, (internal citations omitted).*
[21] *Id. (internal citations omitted).*
[22] *Id.*
[23] *Id* at *4.
[24] 43 Pa. Stat. § 962(c)(3) (authorizing court to award "any other legal or equitable relief as the court deems appropriate")
[25] "Compensatory awards are available only where the employer has engaged in "intentional discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) *citing* § 1981a(a)(1)

with physical symptomology. Because Wilson did not need to seek medical treatment her for her depression and anxiety, I award her the sum of $5,000 for compensatory damages.

Plaintiff is also requesting punitive damages. "The employer must act with "malice or with reckless indifference to the [plaintiff's] federally protected rights."[26] "The terms "malice" or "reckless indifference" pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination."[27] "An employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages."[28] Clearly, Defendants must have understood that asking a female employee if she performs oral sex without charge and then fires her the same day for complaining about that harassing speech is a violation of federal law. Accordingly, I will also award punitive damages in a multiplier of one (1) times the amount of compensatory damages, for a total of $5,000 for punitive damages.

AUC and AUCOM are jointly and severally liable for this award of damages. While final judgment will be entered, I will retain jurisdiction so that if the sum is not paid to Plaintiff by April 3, 2017, she may return to this Court with a suggested

---

[26] *Id.*
[27] *Id.*
[28] *Id.* at 536.

enforcement mechanism. Additionally, Plaintiff may file a motion for attorney's fees and costs.

## III. CONCLUSION

Plaintiff's motions will be granted and final judgment entered by separate Order docketed this date. Plaintiff is awarded $78,870 for back pay, front pay and pre-judgment interest. She is additionally awarded $5,000 compensatory damages and $5,000 punitive damages. The total award is therefore for $88,870. Interest in the amount of 6% per annum will run beginning April 3, 2017 if the judgment is not paid to Plaintiff by that date. Counsel may file a motion for attorney's fees and costs.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge